UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HENSHAW,

        Petitioner,

                                        CASE NO. 2:07-CV-15058
v.                                      HONORABLE PAUL D. BORMAN

MARY BERGHUIS,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner Robert Henshaw ("Petitioner"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of 12 counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) (person under age 13); Mich. Comp. Laws § 750.520b(1)(b)(i) (same household), following a jury trial in the Macomb County Circuit Court in 2004. He was sentenced to concurrent terms of 23 years 9 months to 40 years imprisonment on those convictions. In his pleadings, Petitioner raises claims concerning the admission of other acts evidence, his right to present a defense, prosecutorial misconduct, the validity of his sentence, and cumulative error. Respondent has filed an answer to the petition contending that it should be denied. For the reasons stated, the Court denies the petition. The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

1

## I. Facts and Procedural History

Petitioner's convictions arise from the sexual assaults of his girlfriend's two daughters at their home in Warren, Michigan. The Michigan Court of Appeals set forth the underlying facts of the case, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Defendant was convicted of sexually assaulting his former girlfriend's two daughters, AT and HT, ages 14 and 16, at the time of trial. The victims' mother met defendant in 1998. In early 1999, she and the two victims, who were nine and 11 years old, moved into defendant's house. Defendant was immediately very involved in the victims' daily lives. Within a short time, defendant allegedly became the sole ruler and disciplinarian in the home, implemented strict rules, and insisted that the victims call him "Dad," often referring to himself as "God." FN1 The victims claimed that defendant began sexually abusing them, often using physical abuse, threats of harm, or the grant or refusal of privileges to garner sexual acts. According to the victims, during the four years that they lived with defendant, he sexually assaulted them from one to several times a week, and the sexual acts primarily included oral sex and sexual intercourse. Additionally, during this time, the relationship between defendant and the victims' mother was tumultuous, and involved domestic violence and excessive alcohol use. On occasion, the victims' mother and the girls briefly moved out of the home because of domestic violence, but returned. In January 2003, after defendant struck AT and dislocated her jaw, the family moved out and did not return. In March 2003, HT reported the alleged sexual abuse to a school liaison officer.

> > FN1. Until late 2002, the victims' mother worked full time, five to six days a week, and defendant was generally home with the victims. Defendant drove the victims' mother to work, and also drove the victims to and from school. Defendant began working in 2002.

> The victims testified that the sexual assaults occurred on numerous occasions, in various ways and locations, including inside defendant's home and "up north." Both girls explained that they could remember specifics of some of the assaults for various reasons, including it being the first time, the location, the pain involved, or it being "worse than other times." Sometimes the assaults would occur with both girls at the same time, sometimes after defendant made them consume alcohol, and sometimes after defendant showed AT pornographic pictures. The girls also testified to violence against them if they refused to engage in the sexual acts, and that defendant would suggest playing "Truth or Dare." Oftentimes defendant would indicate that the sexual acts would get the girls out of trouble, or would allow them privileges.

2

Both victims testified that in 2001, when they moved out of defendant's house for two weeks, HT disclosed the sexual abuse to their mother, and asked that they not return to defendant's house. The victims' mother testified that, as a result of HT's revelation, she talked to defendant, and he indicated that "he was sorry and wanted to get help." He also allegedly promised not to "do it again." She also told HT "to be good, not to break any of the rules, and ... to stay away from him." AT testified that after their mother told them that defendant promised that it would not happen again, the matter was never discussed.

The victims explained that they did not disclose the sexual abuse to anyone else because defendant regularly threatened to kill them and their mother if they ever told anyone. Both victims and their mother testified that they were afraid of defendant and believed his threats, explaining that he was often physically violent,FN2 and regularly brandished a handgun.FN3 AT recalled an incident when she was 12 years old, and defendant pushed her against a heater, causing her to injure her back. She disclosed the incident to school personnel, who reported the incident to a protective services (PS) worker. After the PS worker talked to defendant, he prohibited the victims from using the shower or electricity for two days. Defendant allegedly offered to lift the restrictions if both agreed to have sex with him. HT testified that the PS worker made the situation worse, and "just left."

> FN2. The police were called to the house on four occasions. According to AT and her mother, at other times defendant would stop them from calling the police or leaving the house.

> FN3. The police confiscated a handgun from defendant's home. HT indicated that defendant said he could kill them and get away with it because his gun had no serial numbers.

Defendant testified at trial and denied sexually assaulting the victims, admitting to their mother that he did so, threatening anyone with a gun, or playing "Truth or Dare." He admitted that he had a bad temper, that he and the victims' mother fought frequently, and that he struck AT in January 2003. Three defense witnesses, who were defendant's friends, denied seeing inappropriate behavior between defendant and the victims. The witnesses maintained that, although defendant and the victims' mother fought, defendant treated the victims with respect.

*People v. Henshaw*, No. 258359, *1-2 (Mich. Ct. App. May 2, 2006) (unpublished). At the close of trial, the jury convicted Petitioner of the charged offenses. The trial court subsequently sentenced him to concurrent terms of 23 years 9 months to 40 years imprisonment.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of

3

Appeals essentially raising the same claims contained in the present petition.  The Michigan Court of Appeals affirmed Petitioner's convictions and sentences.  *See People v. Henshaw*, No. 258359 (Mich. Ct. App. May 2, 2006) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *See People v. Henshaw*, 477 Mich. 952, 723 N.W.2d 905 (2006).

Petitioner thereafter filed the present petition for a writ of habeas corpus asserting the following claims as grounds for relief:

I.   The Michigan Court of Appeals violated his right to due process of law abrogating his right of appeal by unreasonably determining that trial counsel failed to object to the trial court's outrageous rulings pursuant to MRE 404(b) when the record shows that trial counsel objected both in writing and during the trial.

II.  The trial court's prohibition of his defense exhibits and the destruction of exculpatory evidence denied him the right to present a defense in violation of Amendments V, VI and XIV.

III. The prosecutor's misconduct denied him a fair trial and due process of law in violation of Amendments V, VI and XIV of the United States Constitution.

IV.  His sentence was increased based on factors not admitted by him nor determined by the jury and therefore violated his Sixth Amendment right to a jury trial and denied him due process pursuant to *Blakely v. Washington* and *Apprendi v. New Jersey*.

V.   The cumulative effect of the errors denied him a fair trial.  US Const. Am XIV.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.  Petitioner has filed a reply to that answer.

## II.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition

4

after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA

provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless

arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535

U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal

habeas court to 'grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535

U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme

Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539

U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  Analysis

#### A.  Evidentiary Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence and the Michigan Court of Appeals' erroneously determined that defense counsel failed to object to such matters at trial. Specifically, Petitioner objects to the admission of testimony and/or evidence concerning his prior assault convictions, his adult magazine collection, naked women screen savers, and pornographic cartoons (shown or emailed to the girls), his purported membership in a sex cult as a teenager, his use of a gun to threaten the girls and their

6

mother, his denial of electricity and utilities to punish the girls, and his provision of alcohol to the girls. Respondent contends that this claim is not cognizable and lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

As to the admission of prior acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[1] Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Moreover, Petitioner's claim that the state trial court violated Michigan Rule of Evidence 404(b) by admitting the other acts evidence is not cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007). Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim in this regard, he is not entitled to

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

relief.  Petitioner has not shown that the admission of the disputed evidence rendered his trial fundamentally unfair.  As explained by the Michigan Court of Appeals in reviewing these issues under state law, such evidence was relevant to explain the circumstances of the crime, to show Petitioner's motive, common plan or scheme, to explain the girls' delay in reporting the sexual abuse, to rebut the defense theory of fabrication, and/or to assist in the determination of witness credibility.  *See Henshaw*, No. 258359 at *3-6.  Such testimony was properly admitted under state law for those purposes and the prosecution did not make an improper character or propensity argument based on the evidence.  Petitioner has not shown that the admission of this evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

Additionally, to the extent that Petitioner asserts that he was denied a fair appeal because the Michigan Court of Appeals applied the wrong standard of appellate review to some of his claims, he fails to state a claim for habeas relief.  This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law.  *See Estelle*, 502 U.S. at 67-68.  A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Furthermore, a fair reading of the Michigan Court of Appeals' decision indicates that the court found that Petitioner's "other acts evidence" claims lacked substantive merit.  In other words, it appears that the court found no error, not merely no plain error.  In any event, Petitioner has not established a violation of his constitutional rights.  Habeas relief is not warranted on this claim.

B.  Right to Present a Defense Claims

Petitioner also asserts that he is entitled to habeas relief because the trial court denied him the right to present a defense by excluding birthday and Father's Day cards given to him by the girls, as well as a letter that AT wrote to the Secretary of State to assist him in regaining his driver's license.  Petitioner alleges that the documents would have shown his positive relationship with the victims, demonstrated AT's state of mind, and impeached AT's credibility.  Petitioner also claims that he was denied the right to present a defense by the police destruction of evidence, a container containing slips of paper with sexual innuendos kept by HT and used to play "Truth or Dare" with her friends.  Respondent contends that these claims lack merit.

Petitioner first asserts that the trial court erred in excluding the cards and letter and violated his right to present a defense.  As an initial matter, to the extent that Petitioner asserts a violation of state procedural or evidentiary law, he is not entitled to relief from this Court.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *See, e.g., Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo*, 809 F.2d at 328.  Moreover, as discussed *supra*, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354.  Only when an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, may it violate due process and warrant federal habeas relief.  *See Bugh*, 329 F.3d at 512; *Clemmons*, 34 F.3d at 356.

Petitioner asserts a violation of the right to present a defense.  The right of the accused to present a defense has long been recognized as "a fundamental element of due process."  *Washington v. Texas,* 388 U.S. 14, 19 (1967).  However, "a defendant's right to present evidence

9

is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  As explained by the Supreme Court, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury....  [T]he Constitution permits judges "to exclude evidence that is 'repetitive...only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted).  Excluded evidence violates the right to present a defense only if the exclusion is arbitrary or disproportionate to the purpose it was designed to serve or infringes on a weighty interest of the accused.  *Scheffer*, 523 U.S. at 308.  In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result.  Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

The Michigan Court of Appeals addressed this issue as a matter of both state and federal law and denied relief.  The court determined that the documents were properly excluded under the Michigan Rules of Evidence and that Petitioner was not deprived of the right to present a defense because he and the girls testified about the content of the cards and letter even though those items were not themselves admitted into evidence.  *See Henshaw*, No. 258359 at *6-8.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.  Petitioner has not established that the state court violated his constitutional rights by refusing to admit the cards and letter into evidence.  The

trial court's ruling was reasonable and meant to preclude the admission of hearsay under state law. More importantly, the substance of the cards and letter was presented to the jury during the questioning of the girls and Petitioner. Defense counsel thus had ample opportunity to inquire into such matters and to make defense arguments based upon the information. The jury was well aware of Petitioner's defense that he did not commit the charged acts and that the girls were lying. Petitioner has failed to establish that the trial court's ruling violated his right to present a defense or otherwise rendered his trial fundamentally unfair.

Petitioner also asserts that he was denied the right to present a defense because the police lost/destroyed HT's container of paper slips with sexual innuendos written on them. The failure of police to preserve potentially useful evidence for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *see also Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (per curiam). When the state fails to preserve evidentiary material, a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F.3d 568, 580 (6th Cir. 2002).

A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence or absence of bad

faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56. Thus, "where the government is negligent, even grossly negligent, in failing to preserve potential exculpatory evidence, the bad faith requirement is not satisfied." *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001).

The Michigan Court of Appeals denied relief on this claim reasoning that a police officer testified about the container, its contents, and its loss; that the evidence was not exculpatory; and that there was no evidence that the police acted in bad faith. *See Henshaw*, No. 258359 at *8-9. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the record is devoid of evidence that the police or prosecution authorities acted in bad faith – a necessary requirement to establish a constitutional violation. Second, the lost evidence, while perhaps having some impeachment value, was not exculpatory as to the charged offenses. Third, the record reveals that one of the police officers testified about the container and its contents such that Petitioner was able to make arguments concerning the lost evidence. Given such circumstances, Petitioner has failed to establish a constitutional violation. Habeas relief is not warranted on this claim.

## C. Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by introducing and relying upon the aforementioned "other acts" evidence, by arguing facts not in evidence, by vouching for the credibility of the victims' mother, and by denigrating the defense. Respondent contends that these claims are barred by procedural default and/or lack merit.

### 1. Procedurally Defaulted Claims

12

As an initial matter, Respondent contends that Petitioner's claims involving the prosecutor's remarks about "domestic violence syndrome," the honesty of the victims' mother, and the defense's "red herrings" are barred by procedural default because Petitioner failed to object to those remarks during trial.  This Court agrees.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In dismissing these claims, the court relied upon a state procedural bar – Petitioner's failure to object at trial.  *See Henshaw*, No. 258359 at *9-12.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51

13

(1991).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  In this case, the Michigan Court of Appeals denied these claims based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  Petitioner neither alleges nor establishes cause to excuse this procedural default.  A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).[2]

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*

---

[2]Moreover, the Court notes that Petitioner cannot establish prejudice as these claims lack merit for the reasons stated by the Michigan Court of Appeals on plain error review.  *See Henshaw*, No. 258359 at *9-12.

*v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing. These claims are thus barred by procedural default and do not warrant habeas relief.

### 2.  Merits of Remaining Claims

Petitioner's remaining prosecutorial misconduct claims concern the prosecutor's introduction and use of the "other acts" evidence and the prosecutor's argument that "the evidence [in sexual abuse cases] comes from witnesses in 90 percent of the time in all cases."  The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper.  *Id*. at 452.  Upon a finding of impropriety, the court must decide whether the statements were flagrant.  *Id.*  Flagrancy is determined by an examination of four factors:  1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the

total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner asserts that the prosecutor engaged in misconduct by introducing and relying upon the admitted "other acts" evidence. The Michigan Court of Appeals did not address this claim as a distinct issue on direct appeal. Consequently, the deference ordinarily due under 28 U.S.C. § 2254(d) does not apply, and habeas review of this claim is *de novo*. *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)). Upon such consideration, the Court concludes that this claim lacks merit. As discussed *supra*, the state trial court ruled that the other acts evidence was admissible as a matter of state law (and the state appellate court upheld that decision). It is not misconduct for a prosecutor to offer evidence and rely upon evidence which is deemed relevant and admissible by the trial court. *See Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008), *cert den. sub nom Cristini v. Hofbauer*, 129 S. Ct. 1991 (2009); *Missouri v. Birkett*, No. 08-CV-11660, 2009 WL 3625392, *7 (E.D. Mich. Oct. 29, 2009) (prosecutor did not engage in misconduct by relying upon admitted "other acts" evidence of petitioner's drug use and drug dealing); *Moore v. Stovall*, No. 06-CV-14824, 2008 WL 2547418, *3 (E.D. Mich. June 20, 2008); *accord Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997). Habeas relief is not warranted.

Petitioner also asserts that the prosecutor engaged in misconduct by arguing facts not in evidence by stating that "the evidence [in sexual abuse cases] comes from witnesses' testimony in

16

90 percent of the time in all cases." It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005); *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

The Michigan Court of Appeals denied relief on this claim finding that the remarks were intended to refute defense arguments concerning the lack of physical evidence, that the prosecutor explained her duty to prove the case beyond a reasonable doubt and urged the jury to convict based upon the evidence presented, and the trial court instructed the jury that the lawyers' comments were not evidence. *See Henshaw*, No. 258359 at *10-11. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The prosecutor's remark, while not based upon the evidence per se, was not misleading, was made in rebuttal to defense arguments, and was relatively isolated. Moreover, any potential prejudice was cured by the trial court's instructions that the jury had to follow the law as set forth by the court and that the attorneys' remarks were not evidence. Jurors are presumed to follow those instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has failed to establish that the prosecutor's remarks, even if improper, were so flagrant as to deny him a fair trial. Habeas relief is not warranted on this claim.

## D.  Sentencing Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court violated his Sixth Amendment right to a jury trial in imposing his sentence by relying upon facts neither admitted by him nor proven to a jury beyond a reasonable doubt. In *Apprendi v. New Jersey*, 530 U.S. 466, 530 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any

17

fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court applied *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding, held that the state guideline scheme violated Sixth Amendment rights, and reiterated that any fact that increased the maximum sentence must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 232 (2005). Petitioner cites *Apprendi* and *Blakely* in his pleadings. Respondent contends that this claim lacks merit.

The Michigan Court of Appeals denied relief on this claim finding that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. *See Henshaw*, No. 258359 at *12. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The *Blakely* line of cases do not apply to Michigan's intermediate sentencing scheme. In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence. The federal courts within this Circuit have examined Michigan's indeterminate sentencing scheme and have found no Sixth Amendment violation. *See Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009) (state trial judge did not violate petitioner's Sixth Amendment rights by finding facts that raised his minimum sentence but did not exceed statutory maximum); *Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198 (6th Cir. Oct. 26, 2007) (unpublished); *Delavern v. Harry*, No. 07-CV-13293, 2007 WL 2652603, *3-4 (E.D. Mich. Sept. 7, 2007); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, * 2 (W.D. Mich. Nov. 30, 2006); *accord People v. Drohan*, 475 Mich. 140, 160-62, 715 N.W.2d 778 (2006). Petitioner's sentences do not exceed the statutory maximum. Habeas relief is not warranted on this claim.

18

E.  Cumulative Error Claim

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors committed at trial.  Respondent contends that this claim lacks merit and does not warrant federal habeas relief.  The Michigan Court of Appeals denied relief on this claim because Petitioner failed to present any errors warranting reversal.  *See Henshaw*, No. 258359 at *12. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  Petitioner cannot establish that he is entitled to habeas relief based upon cumulative error because he has failed to demonstrate an underlying constitutional violation. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006).  Moreover, the Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Habeas relief is not warranted on this claim.

**IV.  Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in this case.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that...jurists could conclude

19

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. When a court rejects a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that reasonable jurists would not find the Court's procedural ruling debatable. The Court further concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** leave to proceed *in forma pauperis* on appeal because any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 10, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 10, 2009.

S/Denise Goodine
Case Manager